IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**KIRBY KYLES,**

    **Petitioner,**

  v.         CASE NO. 11-3006-RDR

**C. CHESTER,
Warden,**

    **Respondent.**

## MEMORANDUM AND ORDER

This petition for writ of habeas corpus was filed pursuant to 28 U.S.C. § 2241 by an inmate of the United States Penitentiary, Leavenworth, Kansas. The filing fee has been paid. Having examined the materials filed the court finds as follows.

## FACTUAL BACKGROUND

Petitioner is currently confined due to his conviction in the United States District Court for the Western District of Oklahoma of Bankruptcy Fraud, 18 U.S.C. § 152(2), and sentence on June 9, 2010, to 46 months in prison. He alleges that this crime was in connection with the bankruptcy he filed in June 2007 and was committed in July 2007.

Petitioner's allegations and exhibits indicate the following. On August 6, 2010, he applied for the RDAP program.[1] He was interviewed "by the RDAP person Dr. Wells" and advised that because he had previously been granted early release on June 18, 1999, for

---

[1] The RDAP, Residential Drug Abuse Treatment Program, involves three components which the inmate must successfully complete, including participation in a "unit-based" program for at least six months while incarcerated as well as transitional services programming in a community-based program. See 28 C.F.R. § 550.53.

completion of the RDAP, he could not get sentence credit again. Mr. Kyles does not refute that he was previously granted early release from a prior sentence.

**CLAIMS**

Petitioner first essentially claims that the U.S. Bureau of Prison's (BOP) exclusion of previous RDAP custody reduction recipients exceeds the authority granted to it by Congress in 18 U.S.C. § 3621(e). In support, he alleges that the statute directs the BOP to provide RDAP for all prisoners in need of drug treatment and establishes no criteria for this exclusion. Petitioner also raises an "ex post facto argument." In support, he alleges that his current crime occurred in 2007 when the "prior version of the Code of Federal Regulations as to the RDAP participation was in effect." He contends that the law "annexed to his crime" when committed in 2007 was 18 U.S.C. § 3621(e), and that prior to January 2009, this statute allowed for a reduction in his sentence regardless of whether he had previously participated in the RDAP. In addition, he contends that the current federal regulation became effective in March 2009, and cannot be applied retroactively to his actions in 2007. He also claims that the "2009 Amendment" establishes "a punishment of a longer sentence" that is "more onerous than in effect on the date of his crime," and increased his sentence by one year due to his loss of the one-year reduction for RDAP participation.

Mr. Kyles also suggests that the BOP's "RDAP rule change" violated due process by failing to provide notice, and claims that

2

he has a liberty interest in the one-year reduction. Finally, he baldly asserts "unequal treatment."[2] The court is asked to order the BOP to reconsider and grant Mr. Kyles credit for participating in the RDAP and a sentence reduction of 12 months.

**EXHAUSTION**

It appears that petitioner has exhausted BOP administrative remedies. He provides an exhibit of his unsuccessful attempt at informal resolution. He also provides exhibits of his Central Office appeal, which indicate that he must have completed appeals to the Warden and the Regional Office. His exhibits also show that the time for the agency's response to his Central Office appeal was extended for 20 days. He alleges that he did not receive a response within the extended time. Under 28 C.F.R. § 542.18, as petitioner notes, he "may consider the absence of a response to be a denial at that level."

**HABEAS CORPUS STANDARDS**

Habeas corpus relief under 28 U.S.C. § 2241 is available when a prisoner demonstrates that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21 (1975). 28 U.S.C. § 2243 provides in relevant part:

A court, justice or judge entertaining an application for

---

[2] Petitioner alleges no facts whatsoever to establish the essential elements of a claim under the Equal Protection Clause of the Fourteenth Amendment. See Rider v. Werholtz, 548 F.Supp.2d 1188, 1202 (D.Kan. 2008)(citing Riddle v. Mondragon, 83 F.3d 1197, 1207 (10th Cir. 1996)). For example, he does not allege that he is a member of a suspect class, or that he was treated differently from other similarly-situated prisoners. See Fogle v. Pierson, 435 F.3d 1252, 1261 (10th Cir. 2006). Accordingly, this claim is not addressed further.

a writ of habeas corpus shall forthwith award the writ or
issue an order directing the respondent to show cause why
the writ should not be granted, unless it appears from the
application that the applicant or person detained is not
entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). Nevertheless, a federal district court can dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief. See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); see also 28 U.S.C. §§ 2243, 2255. Having considered all materials filed, the court finds that petitioner is not entitled to habeas corpus relief under § 2241 for the following reasons.

**RELEVANT LAWS AND RULES**

The statute from which the RDAP program developed is 18 U.S.C. § 3621, which also generally commits federal prisoners to the custody of the BOP, and provides that the BOP "shall designate the place of a prisoner's imprisonment." In 1990, Congress added provisions respecting drug treatment for federal prisoners. The next to the last sentence of subsection (b) now provides:

> The Bureau shall make available appropriate substance
> abuse treatment for each prisoner the Bureau determines
> has a treatable condition of substance addiction or abuse.

18 U.S.C. § 3621(b). Subsection (e) "Substance abuse treatment" now provides in pertinent part:

> (1) Phase-in.--In order to carry out the requirement . .
> . that every prisoner with a substance abuse problem have
> the opportunity to participate in appropriate substance
> abuse treatment, the Bureau of Prisons shall, subject to
> the availability of appropriations, provide residential

4

>     substance abuse treatment (and make arrangements for
>     appropriate aftercare)--
>
> * * *
>
> (2) Incentive for prisoners' successful completion of
> treatment program.--
>
> > (A) Generally.--Any prisoner who, in the
> > judgment of the Director of the Bureau of
> > Prisons, has successfully completed a program
> > of residential substance abuse treatment
> > provided under paragraph (1) of this
> > subsection, shall remain in the custody of the
> > Bureau under such conditions as the Bureau
> > deems appropriate. If the conditions of
> > confinement are different from those the
> > prisoner would have experienced absent the
> > successful completion of the treatment, the
> > Bureau shall periodically test the prisoner for
> > substance abuse and discontinue such conditions
> > on determining that substance abuse has
> > recurred.
> >
> > (B) Period of custody.-- The period a prisoner
> > convicted of a nonviolent offense remains in
> > custody after successfully completing a
> > treatment program may be reduced by the Bureau
> > of Prisons, but such reduction may not be more
> > than one year from the term the prisoner must
> > otherwise serve.

18 U.S.C. § 3621(e). Obviously, this was a very general delegation of authority to the BOP. Section 3621 did not set forth criteria for eligibility for early release. Rather, the statute vested the BOP with discretionary authority to determine when an inmate's period of custody may be reduced.[3]

In order to exercise its discretionary authority, the BOP, as is customary, issued BOP Program Statements (PS) and promulgated regulations in the Code of Federal Regulations (C.F.R.). In these

---

[3] There has been much litigation regarding the program statements and federal regulations issued in connection with the amendments to § 3621 and earlier exclusions. However, much of it is not relevant to petitioner's claim, which is a challenge to a particular ineligibility that was apparently first introduced by the BOP as a proposed and/or interim rule and in a BOP program statement. One court indicated that this BOP policy was initially put into effect in 2001, years before its codification in the Code of Federal Regulations.

ways, the BOP established criteria for determining eligibility for early release. The pertinent regulation in effect immediately prior to the 2009 amended regulation was 28 C.F.R. § 550.58, "Consideration for Early Release," which provided in part:

> "An inmate who was sentenced . . . for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current confinement may be eligible in accordance with paragraph (a) of this section for early release by a period not to exceed 12 months.

Id. In paragraph (a), this former regulation provided:

> (a) Additional early release criteria. (1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release: . . .

28 C.F.R. § 550.58(a). Thereafter, in subparagraphs (a)(1)(i)-(vi)(A-D), exclusions were listed that at the time did not include the one applied to and challenged by Mr. Kyles. Id.

Another district judge faced with similar claims explained the regulatory history of the amendment to the Code of Federal Regulations limiting inmates to one early release:

> [O]n July 1, 2004, the BOP published a proposed rule seeking to amend its regulations on the drug abuse program. The proposed rule clarified that inmates would not be permitted to earn an early release twice. 69 Fed.Reg. 39887-02 (July 1, 2004). . . .
>
> The 2004 Proposed Rule explained that "Congress created the early release incentive to motivate drug addicted inmates to enter residential drug abuse treatment who would not do so without this incentive. However, in our discretion, it is not appropriate to provide this incentive for inmates who completed RDAP, gained early release, but failed to remain drug and crime free. To provide this incentive to the same inmate twice would be counter to our drug treatment philosophy that inmates must be held accountable for their actions when released to the community." 69 Fed.Reg. 39887-02.

See Murray v. Gagnon, 2010 WL 3883437, *3, FN3 (W.D.Pa. Sept. 28,

6

2010)(discussing the regulatory history of Section 550.55(b)(7)). The 2004 Proposed Rule was finalized and published in the Federal Register on January 14, 2009. Id. at *4 (citing 74 Fed.Reg. 1892-01). 28 C.F.R. § 550.58 was thus superseded on January 14, 2009, by the new regulation, which appears at 28 C.F.R. § 550.55 ("Eligibility for early release."). In this manner, the new exclusion was eventually codified at 28 C.F.R. § 550.55(b)(7)(2009). Id. at *3.

Possibly even before the foregoing regulatory history was underway however, on September 29, 2003, the BOP issued Program Statement 5331.01[4] entitled "Early Release Procedures Under 18 U.S.C. § 3621(e)." The purpose of this Program Statement was delineated as "to establish criteria and procedures when considering an inmate for early release" (P.S. 5331.01 at 1). In Paragraph 5(c), the BOP set forth the categories of inmates not eligible for early release (id. at 2), which were the same as those categories as set forth in 28 C.F.R. § 550.58(a)(1)(i)-(vi)(A-D). In this 2003 Program Statement, the BOP added the category that is the subject of petitioner's challenge, that inmates cannot receive early release

---

[4] Paragraph 5 of Program Statement 5331.01, "EARLY RELEASE CRITERIA," stated in pertinent part: "In this section, we briefly describe the criteria that an inmate must meet to be eligible for early release. It thereafter provided: "c. Inmates Ineligible for Early Release. The Bureau has determined that the following categories of inmates are not eligible for early release. . . ." Included in the listing was the following paragraph:

> [x] Prior Early Release Granted. Inmates may earn an early release for successful RDAP completion only once. Inmates returning on supervised release violations and/or inmates who are sentenced for new offenses are not eligible for early release if they received it previously. . . .

See Burkey v. Marberry, 556 F.3d 142, 144-45 (3rd Cir. 2009)(action dismissed as moot due to release)(citing P.S. 5331.01, at ¶ 5 (September 29, 2003, as corrected, October. 3, 2003)).

7

credit if they received such credit on a prior sentence.[5]  Thus, ¶ 5(c) of PS 5331.01 provided in part:

> Inmates may earn an early release for successful RDAP completion only once.  Inmates returning on supervised release violations and/or inmates who are sentenced for new offenses are not eligible for early release if they received it previously.

See Barron v. Berkebile, 2008 WL 4792532 (N.D.Tex. 2008).[6]

Effective March 16, 2009, PS 5331.01 (9/29/03) was rescinded, and replaced by the issuance of new PS 5331.02 also entitled "Early Release Procedures Under 18 U.S.C. § 3621(e)."  This new Program Statement lists the criteria that "renders an inmate *eligible* for § 3621(e)" early release.  P.S. 5331.02, part 4(a).  It also lists in part 5(b) "as an exercise of the (BOP) Director's discretion" the categories of inmates "not eligible for early release."  Again included among the latter categories are "inmates who previously received an early release under 18 U.S.C. § 3621(e)."  Id., Part 5(b)(7).  The Program Statement further provides that if the Drug Abuse Program Coordinator determines that the inmate has received a prior early release under § 3621(e), "the inmate is NOT ELIGIBLE for a § 3621(e) early release and no further review is required."  Id., Part 7(a).

**EXCLUSION IS WITHIN AUTHORITY OF § 3621**

---

[5] It is thus clear that when the BOP first instituted its policy that an inmate cannot be considered for early release under § 3621(e)(2)(B) if he previously received such release from a prior sentence, it did not immediately issue the requirement as a regulation.  Instead, the BOP initiated this policy in PS 5331.01.  PS 5331.01 did not merely propose a policy which the agency hoped to implement in the future.  Rather, PS 5331.01 by its own force precluded BOP officials from considering an inmate for early release under § 3621(e)(2)(B) if that inmate previously received a reduction.  See Barron, at *5.

[6] The unpublished opinions cited herein are not cited for precedential value.

Petitioner's claim that the BOP's decision in his case exceeds its authority under § 3621 because the statute itself does not provide for exclusion of any inmate in need of drug treatment, is without merit. Numerous similar challenges were made to other exclusions set forth in 28 C.F.R. § 550.58, such as the exclusion of persons convicted of a felony involving the carrying, possession or use of a firearm or other dangerous weapon. The U.S. Supreme Court unquestionably resolved that the BOP has the authority to provide for reasonable exclusions from 3621(e)(2)(B) early release eligibility. See Lopez v. Davis, 531 U.S. 230, 238-40 (2001). In Lopez, the Supreme Court stated that the BOP "may exclude inmates either categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, in a manner that is not arbitrary or capricious." Id. at 240 (internal citations omitted). The Court reasoned that "[b]eyond instructing that the Bureau has discretion to reduce the period of imprisonment for a nonviolent offender who successfully completes drug treatment, Congress has not identified any further circumstance in which the Bureau either must grant the reduction, or is forbidden to do so." Id. at 242. Thus, the Supreme Court in Lopez expressly held that the BOP was free to exercise its discretion to place restrictions on early release that were not set forth in the statute. Id. Petitioner has not shown that the BOP's exclusion policy was other than a permissible exercise of its discretion and an acceptable interpretation of 18 U.S.C. § 3621(e)(2)(B).

**NO EX POST FACTO VIOLATION**

Petitioner argues that the application of the newest federal

9

regulation effective in 2009, 28 C.F.R. § 550.55(b)(7), to preclude him from early release violates the Ex Post Facto Clause of the U.S. Constitution because this regulation was promulgated after his offense conduct in 2007. This argument lacks factual support as well as legal merit. Article I, § 10, of the Federal Constitution provides that "[n]o States shall . . . pass any . . . ex post facto law." The central concerns of this provision are "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Weaver v. Graham, 450 U.S. 24, 30 (1981). "To fall within the ex post facto prohibition, a law must be retrospective-that is, it must apply to events occurring before its enactment-and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997)(internal quotations and citations omitted); Collins v. Youngblood, 497 U.S. 37, 41 (1990). In Stiver v. Meko, 130 F.3d 574, 578 (3rd Cir. 1997), the Third Circuit plainly described the two conditions that must be met in order for a law to violate the Ex Post Facto Clause. First, the law must be retrospective and apply to events occurring before its enactment. Second, the change in the law must alter the definition of criminal conduct or increase the penalty. Petitioner in this case meets neither condition.

The facts alleged by Mr. Kyles do not establish that the BOP's policy to exclude inmates with a prior early release was retrospectively applied to him. As noted, PS 5331.01 included this very policy and its effective date was September 29, 2003. In addition, the BOP published its interim or proposed rule including

10

this new exclusion on July 1, 2004. The offense for which Mr. Kyles is confined occurred years later on July 11, 2007. Petitioner complains about the application to him of a provision of the Code of Federal Regulations that was amended in 2009, while he ignores that the BOP Program Statement containing the same exclusion went into effect in 2003. It follows that at the time Mr. Kyles committed his offense in 2007, the BOP policy excluding an inmate from receiving a second custody reduction had long been in effect and notice of this change had been published years earlier. Hence the facts alleged by Mr. Kyles do not evince an ex post facto violation. See Royal v. Tombone, 141 F.3d 596, 603 (5th Cir. 1998)(Since "there was no possibility of a reduction in [petitioner's] sentence on this basis at the time he committed the offense, the fact that he is not eligible for the reduction does not render (the new regulation) more onerous than the law in effect on the date of the offense, as is required for an ex post facto violation.").

Furthermore, 28 C.F.R. § 550.55(b)(7), the amended regulation which petitioner specifically argues was retroactively applied to him, was not. This regulation was adopted prior to the date on which Mr. Kyles was interviewed for entry into the RDAP. He was evaluated for the RDAP program and early release on August 6, 2010. Therefore, his early release eligibility was appropriately considered under the amended regulation that was finalized in early 2009. See Murray, 2010 WL 3883437 at *4 (Petitioner was determined to be ineligible for early release on August 19, 2009, after finalization of the rule excluding him from early release eligibility.). In addition, Kyles does not allege that he was ever told in connection with his current sentence that he was eligible

11

for the early release program. See Hunnicut v. Hawk, 229 F.3d 997, 1001 (10th Cir. 2000).[7] Thus, petitioner has not shown that he legitimately had any settled expectation of eligibility or that he lost any vested right. Id.

Petitioner also fails to meet the second condition. Even if petitioner could show retrospective application, he has not demonstrated how the BOP's decision either increased the legal consequences of his crime or increased the punishment for such crime. See Giannini v. Federal BOP, 2010 WL 1427318, *7 (D.Minn. Feb. 12, 2010), aff'd, 2010 WL 5297188 (8th Cir. Dec. 28, 2010). The length of the sentence imposed by the court upon Mr. Kyles has not been increased. Rather, the challenged exclusion "merely deprived him of an opportunity to take advantage of a discretionary early release provision." See Alexander v. Wendt, 127 Fed.Appx. 695, 696 (5th Cir. 2005)(No ex post facto violation where inmate was denied early release under § 3621(e)(2)(B) because "[t]he application of the program statements and regulations to [petitioner] merely deprived him of an opportunity to take advantage of a discretionary early-release provision" and " did not increase the penalty for his offense."); see also Seacrest v. Gallegos, 30 Fed.Appx. 755, 756 (10th Cir. 2002)(The BOP did not violate the Ex Post Facto Clause

---

[7] Petitioner appears to argue that the BOP's application of a different rule during his earlier sentence created a "settled expectation" that if he committed a crime in the future the former rule would be applied to him. In Hunnicutt, the Tenth Circuit rejected a similar argument. The petitioner in Hunnicutt claimed that the BOP could not, upon reconsideration of his request for early release under § 3621(e)(2)(B), use different criteria than those that the BOP initially applied to his request. Id. at 1001. The Tenth Circuit found it significant that the amended regulation and Program Statement applied by the BOP were adopted prior to Mr. Hunnicutt's entry into the RDAP, and that he was never told that he was eligible for the early release program." Id. As a result, the Tenth Circuit held that Hunnicutt "did not lose any vested right, nor did he have any settled expectation of eligibility." See Sledge v. Wilner, 2010 WL 717852 (D.Colo. 2010)(citing id.).

because the decision to exclude inmate from early release consideration did not affect the legal definition of the crime he committed or increase his punishment.); Fristoe v. Thompson, 144 F.3d 627, 633 (10th Cir. 1998)(Denial of early release pursuant to 28 C.F.R. § 550.58 and BOP program statement did not constitute an ex post facto violation because the challenged regulation did not affect the legal consequences of petitioner's crime or increase his punishment.); Stiver, 130 F.3d at 578 (The BOP's application of 3621(e)(2)(B) did not constitute an ex post facto violation because the inmate suffered no disadvantage as a result of the regulation and "the legal consequences of his crime were the same when he committed it as they are today.").

**NO LIBERTY INTEREST IN SENTENCE REDUCTION**

Petitioner's allegations fail to establish that he has any constitutionally recognized liberty interest in receiving the early release benefit. The Supreme Court has plainly held that a prisoner has no constitutional right to be released before the completion of a valid sentence. See Greenholtz Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979)("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); Sandin v. Conner, 515 U.S. 472, 484 (1995). The statute itself, 18 U.S.C. § 3621(e), does not implicate a constitutionally-protected liberty interest because it does not mandate a sentence reduction. See Royal v. Scibana, 309 Fed.Appx. 284, 286 (10th Cir. 2009)("Just as a prisoner does not possess a constitutional right to a reduction of a valid sentence, . . . , (he) does not possess a constitutional

13

right to retain provisional eligibility for the reduction of a valid sentence.")(omitting citation); <u>Reyes v. Ledezma</u>, 2009 WL 1362606 (W.D. Okla., May 14, 2009). Section 3621(e)(2)(B) does not require the BOP to grant petitioner a one-year reduction in custody; it merely permits the BOP to do so. See <u>Zacher v. Tippy</u>, 202 F.3d 1039, 1041 (8th Cir. 2000)("The language of section 3621(e)(2)(B) is permissive, stating that the Bureau 'may' grant early release, but not guaranteeing eligible inmates early release.") Thus, federal courts have consistently held that § 3621(e) does not create a liberty interest in the RDAP and receiving a reduction in confinement that is subject to constitutional protection. See, e.g. <u>Cook v. Wiley</u>, 208 F.3d 1314, 1322-23 (11th Cir. 2000)(Inmates have absolutely no constitutional right to, or other protected liberty interest in, participation in the RDAP, or to a custody reduction for completion of the RDAP.); <u>Kotz v. Lappin</u>, 515 F.Supp.2d 143, 149-50 (D.D.C. 2007); <u>Venegas v. Henman</u>, 126 F.3d 760, 765 (5th Cir. 1997); <u>Jacks v. Crabtree</u>, 114 F.3d 983, 986 n. 4 (9th Cir. 1997); <u>Fonner v. Thompson</u>, 955 F.Supp. 638, 642 (N.D.W.Va. 1997); <u>Orr v. Hawk</u>, 156 F.3d 651, 654 (6th Cir. 1998).

## **ACTION NOT ARBITRARY AND CAPRICIOUS**

Mr. Kyles has failed to show that the BOP applied the controlling statute, federal regulation, and program statements to him in an arbitrary manner or that the BOP otherwise abused its discretion. As noted, Program Statement 5331.01 with the challenged policy in paragraph 5(c) had been in effect since late 2003. This policy expressly prohibited inmates from receiving the early release benefit more than once. Nothing in the statute, the former or

current regulations, or the former or current program statements required the BOP to provide petitioner with a second custody reduction. The BOP validly exercised its discretion in finding petitioner ineligible for a second early release benefit under either PS 5331.01 or PS 5331.02. The RDAP Coordinator acted well within his discretion set forth in PS 5331.02 and in accord with 28 C.F.R. 550.55(b)(7) in determining that Mr. Kyles was ineligible for early release under § 3621(e)(2)(B) based upon the fact that he had previously received early release under that statute. Thus, to the extent petitioner is asserting that the BOP violated his constitutional rights by enforcing its early release policy as written in its rules, policy statement and the federal regulations, his argument is "patently frivolous." See Baldwin v. Fed. BOP, 2010 WL 3522078 (D.N.J. Sept. 1, 2010)(and cases cited therein).

**SUMMARY**

Petitioner has not shown that the BOP's exclusion policy is other than a permissible exercise of the BOP's discretion and an acceptable interpretation of 18 U.S.C. § 3621(e)(2)(B). Nor has he alleged facts showing any constitutional or statutory violation in the BOP's application to him of the exclusion set forth in PS 5331.01, PS 5331.02 and 28 C.F.R. 550.55(b)(7). The court concludes that petitioner has not established that he is being held "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), and therefore, habeas relief is not warranted.

Petitioner is given time to show cause why this action should not be dismissed for the reasons stated herein. If he fails to

respond in the time allotted, this action may be dismissed without further notice.

**IT IS THEREFORE ORDERED** that petitioner is granted twenty (20) days in which to show cause why this action should not be dismissed for failure to state a claim under 28 U.S.C. § 2241.

**IT IS SO ORDERED.**

DATED: This 2nd day of March, 2011, at Topeka, Kansas.

s/RICHARD D. ROGERS  
United States District Judge